2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

JONATHAN FLAGG,                    )  No. CV 10-06737-VBK
                                   )
                  Plaintiff,       )  MEMORANDUM OPINION
                                   )  AND ORDER
      v.                           )
                                   )  (Social Security Case)
MICHAEL J. ASTRUE,                 )
Commissioner of Social             )
Security,                          )
                                   )
                  Defendant.       )
_____)

     This matter is before the Court for review of the decision by the
Commissioner of Social Security denying Plaintiff's application for
disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have
consented that the case may be handled by the Magistrate Judge. The
action arises under 42 U.S.C. §405(g), which authorizes the Court to
enter judgment upon the pleadings and transcript of the Administrative
Record ("AR") before the Commissioner. The parties have filed the
Joint Stipulation ("JS"), and the Commissioner has filed the certified
AR.

     This Memorandum Opinion will constitute the Court's findings of
fact and conclusions of law. After reviewing the matter, the Court

concludes that for the reasons set forth, the decision of the Commissioner must be reversed and the matter remanded.

## I

## BACKGROUND

Plaintiff Jonathan Flagg ("Plaintiff") filed an application for Disability Insurance Benefits on October 10, 2006. He alleged an onset date of September 28, 2006, and claimed disability due to Asperger's syndrome, sleep apnea, and stress(AR 159, 174). The Social Security Administration ("SSA") denied Plaintiff's application on initial review (AR 89), and he requested a hearing before an Administrative Law Judge ("ALJ") (AR 94). The first two hearings occurred before ALJ Kevin M. McCormick on February 21, 2008 (AR 25-35) and May 7, 2008 (AR 36-48). No testimony was taken (AR 26; 37) and the ALJ continued both hearings in order to give Plaintiff additional time to retain an attorney (See AR 29, 39). The final hearing on record occurred before ALJ John Moreen on September 10, 2008 (AR 49), and was attended by Plaintiff, along with his counsel (AR 51). The ALJ took testimony from a medical expert ("ME"), Dr. Glenn Griffin (AR 67-78; See 128-134), a vocational expert ("VE") (AR 82-86), and Plaintiff testified on his own behalf (AR 52-66; 79-82).

On November 5, 2008, the ALJ issued a decision finding that Plaintiff was not disabled (AR 17-23). On July 16, 2010, the Appeals Council declined Plaintiff's request for administrative review (AR 1-4), and thus the ALJ's decision became the final decision of the Commissioner, subject to this judicial review.

Plaintiff raises the following issues:

1. Whether the ALJ erred in rejecting the mental functional

2

limitations assessed by treating psychiatrist Dr. Feinfeld and examining psychologist Dr. Townsend; and

2. Whether the ALJ erred in purporting to adopt the testimony of the medical expert while actually rejecting significant portions of that testimony without explanation.

(JS at 6-7.)


In response, the Commissioner argues that the ALJ in fact properly rejected the opinion of the treating psychiatrist, Dr. Feinfeld, and examining consultant, Dr. Townsend, and, further, argues that substantial evidence supports the ALJ's opinion.


**A.    History Of Plaintiff's Impairments And Treatment.**

Plaintiff was 45 years old when he claimed that he became unable to work as a result of his disabling conditions in 2006 (AR 174). Plaintiff graduated from college in 1984 (AR 181). From 1988 to 2006, the SSA employed Plaintiff first as a Benefits Authorizer and then as a Claims Representative ("CR") (AR 221, 237). In 2006, Plaintiff was dismissed from his employment with the SSA (AR 221-44). Since Plaintiff's dismissal, he worked in a grocery store for three weeks (AR 55-56). Plaintiff believes he was dismissed from that position because he violated the personal space of other co-workers (AR 56).

On December 15, 2003, Dr. Feinfeld, a psychiatrist at Kaiser Permanente's Department of Behavioral Health Care, diagnosed Plaintiff with Asperger's syndrome and Acute Stress Disorder as a result of his work related stress (AR 174, 271), and commenced his treatment for these conditions in 2003 (AR 270-71, 274, 275, 280, 283, 285-86, 287, 290, 295, 297, 298, 299, 302, 494, 495, 498, 503). She continued to

treat Plaintiff until 2008. Dr. Feinfeld prescribed Fluoxetine (Prozac) as an anti-depressant and to reduce Plaintiff's anxiety (AR 179). She diagnosed Plaintiff with sleep apnea syndrome, hypertension, and chronic edema (AR 271) based on the diagnosis and treatment of Dr. Silverstein (AR 320), an internist at Kaiser Permanente's Department of Internal Medicine in Panorama City, who commenced his treatment for those conditions in 1996 (AR 177; 787).

During the course of Plaintiff's treatment, Dr. Feinfeld assessed various mental functional limitations in her evaluations, progress notes and letters. Dr. Feinfeld's mental status examination in December 2003 revealed that Plaintiff had a "great deal of difficulty expressing himself", stuttered and answered questions slowly despite having "very concrete" thought processes, and that he suffered from work-related anxiety (AR 271). Based on this examination, Dr. Feinfeld diagnosed Plaintiff with Asperger's syndrome, Acute Stress Disorder based on work-related stress, mild Obsessive Compulsive Disorder, "somewhat impaired social skills", and assessed Plaintiff's Global Assessment of Functioning ("GAF") at 65 (AR 271); Dr. Feinfeld re-affirmed her diagnosis of Asperger's syndrome and Acute Stress Disorder in subsequent progress notes after Plaintiff's visits in January, February, and April 2004 while noting in January that "[Plaintiff seemed] more relaxed ... [was] able to smile and joke [] more, and that [Plaintiff felt] that the Prozac [prescription] was definitely helping him [to relax]." (AR 274; 275; 283); Dr. Feinfeld's letter dated September 2004 assessed that Plaintiff could function well in the workplace with "a more rigid work schedule and other accommodations" despite substantial limitations in his daily functioning, such as his "difficulty with transition and making sudden

4

changes to his daily routine", his difficulty with maintaining personal grooming and appearance, and "difficulty [interpreting] social cues." (AR 285-86); Dr. Feinfeld affirmed her diagnosis in progress notes and evaluations after Plaintiff's regular visits from October 2004 through October 2006 (AR 287, 290, 292, 295, 297, 298, 299, 300, 302). However, she did not see Plaintiff again until November 2007 when she opined that Plaintiff could work with "appropriate modifications for Asperger's" in a letter of the same date (AR 494; 498); Dr. Feinfeld noted in a letter dated February 2008 that Plaintiff could not function in situations requiring "face to face interactions" (AR 495); Dr. Feinfeld noted in a letter dated March 2008 that Plaintiff was "unable to work for the next year, if ever" explaining that his Asperger's syndrome and anxiety conditions were deteriorating, which impaired his "[performance of] functions [requiring] mental activity, such as calculations" and impaired his participation in "interpersonal interaction and communication." (AR 503)

Dr. Sean To, an internist retained by the Commissioner as an examining consultant, conducted an Independent Internal Medicine Evaluation of Plaintiff in March 2007 and assessed Plaintiff's functional limitations as a result of his sleep apnea, chronic edema, and obesity (AR 462-67). Insofar as Plaintiff's mental impairments are concerned, Dr. To assessed in his mental status examination that Plaintiff "appeared appropriately oriented" explaining that Plaintiff's memory "appeared ... average" on the grounds that Plaintiff was able to describe his medical history "adequately", and noted that Plaintiff "appeared to be in no acute distress." (AR 463)

Dr. Jeannette K. Townsend, a psychologist retained by the

Commissioner, assessed Plaintiff's mental limitations in a psychological evaluation in March 2007 (AR 468-72). Dr. Townsend diagnosed Plaintiff with Asperger's syndrome by history, stress resulting from Plaintiff's unemployment, and assessed his GAF at 60 (AR 472). She concluded that Plaintiff could perform "simple repetitive task[s] and complete a full day's work without interruption from psychiatric symptoms" and "[is able to] understand, remember and carry out simple, detailed and complex tasks." (AR 472) She also indicated that Plaintiff's "manner of relating is slightly odd." (AR 472) Based on Plaintiff's performance on five tests administered during the evaluation, she assessed Plaintiff's mood and affect as "appropriate ... [with] no emotional lability or agitation", his thinking as "organized", his immediate memory as "fair", his "intermediate memory for daily activities" and "remote memory for details of his personal history" as "adequate", his insight as "fair", and assessed that his "intellectual functioning was within the average range." (AR 469-70

Dr. Frank L. Williams, a State agency consultant (AR 475-88), assessed Plaintiff's mental functional limitations based on Dr. Townsend's evaluation on a scale which correlates well with the levels of impairment utilized in Social Security evaluations (AR 486-88; see, infra at 10-14): none, mild, moderate, marked, and extreme (AR 483; 486-87). In utilizing this scale, Dr. Williams arrived at levels of mild impairment in the three categories of "restriction of activities of daily living", "difficulties in maintaining social functioning", "difficulties in maintaining concentration, persistence, or pace", and assessed that there was insufficient evidence to support the existence of "repeated episodes of decompensation, each of extended duration."

(AR 483) Dr. Williams' also arrived at levels of moderate impairment in two categories, "[t]he ability to understand and remember detailed instructions" and "[t]he ability to carry out detailed instructions." (AR 486-87) Dr. Williams concluded after his assessment that "[Plaintiff] can perform simple repetitive tasks." (AR 488)

Dr. Glenn Griffin, a psychologist retained by the Commissioner as a medical expert ("ME") (AR 67-78), assessed Plaintiff's mental functional limitations during his testimony using the four criteria in paragraph B of the Listing of Impairments: Dr. Griffin arrived at levels of "moderate to marked" limitations in the category of "maintaining social functioning"; mild limitations in the categories of "restrictions in activities of daily living" and "difficulties in maintaining concentration, persistence, or pace", and assessed that there was insufficient evidence to support the existence of "repeated episodes of decompensation." (AR 69)

Dr. Griffin further assessed marked limitations in Plaintiff's "ability to get along with co-workers and peers without distracting them or exhibiting behavioral extremes"; moderate limitations in Plaintiff's "ability to maintain attention and concentration for extended periods of time", his "ability to work in coordination or proximity with others without being a distraction to them", his "ability to complete a normal workday without interruption from psychologically-based symptoms", and "his ability to maintain socially-appropriate behavior and adhere to basic standards of neatness and cleanliness" (AR 71-72); and "[no] significant limitations in understanding and remembering." (AR 71)

At the hearing (AR 50-87), the ALJ posed the following hypothetical to the VE: "I want you to assume a hypothetical

7

individual with [Plaintiff's] age, education, and background with the following limitations ... they can have only occasional contact with the public, co-workers, and supervisors and they're mildly limited in concentration. Can such an individual do [Plaintiff's] work?" (AR 83-84) The vocational expert testified that Plaintiff could perform the job of "office clerk" based on the ALJ's hypothetical, but could not work as a "claims adjudicator." (AR 84) She further testified that her testimony conformed with the Dictionary of Occupational Titles ("DOT") (AR 84).

## II

### DISCUSSION

**THE ALJ'S REJECTION OF THE ASSESSMENT OF PLAINTIFF'S TREATING PSYCHIATRIST, DR. FEINFELD, AND THE EXAMINING PSYCHOLOGIST, DR. TOWNSEND, ARE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

In his decision (AR 11-23), the ALJ determined Plaintiff's Mental Residual Functional Capacity (MRFC) as follows: "[Plaintiff] can perform work that involves no more than occasionally [sic] contact with supervisors, coworkers and the general public and that he has mild limitations in concentration." (AR 18) In making this assessment, the ALJ rejected the contrary opinion of Plaintiff's treating psychiatrist, Dr. Feinfeld, based on three stated reasons: (1) "Dr. Feinfeld's statements that [Plaintiff] is unable to function in social situations requiring face to face interactions and that he is unable to perform functions requiring calculations, interpersonal interaction and communication are not supported by the longitudinal record."; (2) "Dr. Feinfeld's description of [Plaintiff] and his limitations is inconsistent with [Plaintiff's] presentation during the internal

medicine and psychological consultative evaluations, and his performance on psychological testing."; (3) "Dr. Feinfeld's assessments that [Plaintiff] is "disabled" and/or "unable to work" are brief and conclusory ... [Dr. Feinfeld's] statements usurp the authority of the Commissioner." (AR 18-19) Additionally, the ALJ partially rejected the opinions of the examining psychologist, Dr. Townsend, and the State agency consultant, Dr. Williams, based on one stated reason: "I do not accept the opinions of Dr. Townsend and the State Agency consultants that Plaintiff is limited to the performance of simple repetitive tasks without further limitation. Dr. Griffin [the ME] offered a more complete explanation of his opinion, based on a more complete record. Consequently, I accept his opinion over those of the psychological consultant and the State Agency consultants." (AR. 19, exhibit citation omitted.)

### A. __Applicable Law__.

A claimant is "disabled" for the purpose of receiving benefits under the Social Security Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. §§404.1520, 416.920. In the **First Step**,

the ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§404.1520(b), 416.920(b). If the claimant is not currently engaged in substantial gainful activity, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§404.1520(c), (416.920(c). If the claimant has a severe impairment, in the **Third Step**, the ALJ must compare the impairment to those impairments in the Listing of Impairments ("Listing"), 20 C.F.R. §404, Subpart P, App. 1; if the impairment meets or equals an impairment in the Listing, disability is conclusively presumed and benefits are awarded. 20 C.F.R. §404.1520(d), 416.920(d). When the claimant's impairment does not meet or equal an impairment in the Listing, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§404.1520(e), 416.920(e). When the claimant shows an inability to perform past relevant work, a prima facie case of disability is established and, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§404.1520(f), 416.920(f).

In evaluating mental impairments, 20 C.F.R. §404.1520a(c)(3)(4) and §416.920a(c)(3)(4) mandate that consideration be given, among other things, to activities of daily living ("ADLs"), social functioning; concentration, persistence, or pace; and episodes of

decompensation.  These factors are generally analyzed in a Psychiatric Review Technique Form ("PRTF").  The PRTF is used at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two. See SSR 85-16.

20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require consideration of "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment."

SSR 85-16 suggests the following as relevant evidence:

> "History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psycho-physiological symptoms, withdrawn or bizarre behavior; anxiety or tension.  Reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior.  Reports from workshops, group homes, or similar assistive entities."

It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the

quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

Pursuant to the September 2000 amendments to the regulations which modify 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the ALJ is no longer required to complete and attach a PRTF. The revised regulations identify five discrete categories for the first three of four relevant functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decomposition. These categories are None, Mild, Moderate, Marked, and Extreme. (§404.1520a(c)(3), (4).) In the decision, the ALJ must incorporate pertinent findings and conclusions based on the PRTF technique. §404.1520a(e)(2) mandates that the ALJ's decision must show "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

The Step Two and Three analyses are intended to determine, first, whether a claimant has a severe mental impairment (Step Two), and if so, whether it meets or equals any of the Listings (Step Three). It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance []

require[d]."

These findings and conclusions are relevant to the Step Two and Three analysis of whether a claimant has a severe mental impairment, and if so, whether it meets or equals any of the Listings. (See 20 C.F.R. Part 4, subpart p, App. 1.) The discussion in Listing 12.00, "Mental Disorders," is relevant:

> "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations in paragraphs B and C must be the result of the mental disorders described in the diagnostic description, that is manifested by the medical findings in paragraph A.
>
> In Listing 12.00C, entitled 'Assessment of Severity,' it is stated that, 'we assess functional limitations using the four criteria in paragraph B of the Listings: Activities of daily living; social functioning; concentration; persistence, or pace; and episodes of decompensation. Where we use 'marked' as a standard for measuring the degree of limitation, it means more than moderate but less than extreme."

Social Security Ruling ("SSR") 96-8p makes the same point in distinguishing evidence supporting a rating of mental severity at Step Two, a Listing level impairment at Step Three, and the determination of an individual's MRFC at Step Four.

20 C.F.R. §404.1520a(d)(3) mandates that the Commissioner assess a Plaintiff's RFC if the Commissioner finds that the Plaintiff's mental impairment(s) is severe but neither meets nor is equivalent in

severity to those impairments in the Listing of Impairments ("Listing"). The RFC is an "administrative finding" reserved for the ALJ and the ALJ must reach that finding after considering all of the relevant evidence, including the diagnoses, treatment, observations by the treating physicians and family members, medical records, and Plaintiff's own subjective symptoms. Social Security Ruling 96-5p, 1996 WL 374183 (July 2, 1996); Social Security Ruling 96-8p, 1996 WL 374184 (July 2, 1996)(stating that the "RFC is assessed by adjudicators at each level of the administrative review process based on all of the relevant evidence in the case record ....); Bray v. Commissioner of Social Security Administration, 554 F. 3d 1219, 1224 (9th Cir. 2009)(finding that Social Security Rulings are binding on ALJs even though they do not carry the "force of law").

In deciding whether a Plaintiff is disabled, the ALJ will always consider the medical opinions in the case record together with the rest of the relevant evidence that the ALJ receives. 20 C.F.R. §404.1527 (b). There are three types of medical opinions in social security cases: Opinions from treating physicians, examining consultants, and non-examining physicians. Valentine v. Commissioner of Social Security Administration , 574 F.3d 685, 692 (9th Cir. 2009). "Generally, [the ALJ will] give more weight to opinions from [the Plaintiff's] treating sources." 20 C.F.R. §404.1527 (d)(2).

Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific, legitimate reasons, supported by substantial evidence in the record." Ryan v. Commissioner of Social Security Administration, 528 F.3d 1194, 1198 (9th Cir. 2008). Where the opinion of a non-treating source contradicts the opinion of

Plaintiff's treating physician and is based on independent clinical findings that differ from those of the treating physician, the opinion of a non-treating source may itself constitute substantial evidence. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); But see Id. at 1042 (finding that a non-examining physician's opinion "with nothing more" does not constitute substantial evidence).

"[ALJs] are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 C.F.R. §404.1527 (f)(2)(I). However, "[the ALJ] must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence'." Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006); See also Gallant v. Heckler, 753 F.2d 1450, 1455-56 (9th Cir. 1984)(finding that the ALJ cannot "reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result).

### B. **Analysis**.

The Court will remand the case to the ALJ to conduct a review of Plaintiff's mental impairments. The ALJ did not provide "specific, legitimate reasons, supported by substantial evidence in the record" to reject Dr. Feinfeld's opinion that Plaintiff is unable to perform functions "requiring calculations, interpersonal interaction and communication." (AR 18; See 503) In finding that Plaintiff can "perform work that involves no more than occasionally [sic] contact with supervisors, coworkers and the general public", the ALJ simply concluded that "Dr. Feinfeld's statements ... are not supported by the longitudinal record." (AR 18) The ALJ indicated that he instead

adopted the testimony of the ME (AR 67-78), who concluded that Plaintiff's "essential limitation" was "limited contact with co-workers and supervisors" (AR 78) and who rejected Dr. Feinfeld's conclusions: "I also didn't find evidence as Dr. Finefeld [sic] indicates [AR 503] that [Plaintiff's] condition was deteriorating and deterioration [sic] declining course is not primarily typically part of the syndrome." (AR 72) However, the record as a whole does in fact support Dr. Feinfeld's conclusion that Plaintiff's deteriorating Asperger's syndrome has made him "unable to perform functions that require interpersonal interaction and communication ... and calculations" (AR 503), as well as "[being unable to] function in situations which require face to face interactions." (AR 495) In 2006, the SSA notified Plaintiff of his termination as CR, stating that "since approximately 2003, [Plaintiff's] work quality deteriorated", documenting Plaintiff's previous work-related accomplishments from the beginning of his career in 1988 until 2001, which included receiving awards and a promotion (AR 237). Moreover, the SSA's termination notice showed that the SSA precluded Plaintiff from dealing directly or indirectly with the public as part of his job (See AR 227) as a result of Plaintiff's inability to "have contact with the public" and "inability to get along with co-workers" including numerous complaints from co-workers about Plaintiff's "inability to conform to social norms." (AR 237) If taken at face value, the SSA's assessment of Plaintiff's mental limitations would, in fact, seem consistent with Dr. Feinfeld's own assessment.

Dr. Feinfeld's conclusion that Plaintiff can no longer "perform functions which require mental activity, such as calculations" (AR 503) is also supported by the record as a whole. The SSA documented

Plaintiff's inability to perform his workload which "is by its nature, complex and requires independent decision-making." (AR 223); The State agency consultant, Dr. Frank L. Williams (AR 486-88), arrived at levels of "moderate" limitations in Plaintiff's "ability to carry out detailed instructions" and his "ability to understand and remember detailed instructions." (AR 486); Dr. Townsend, the psychologist retained by the Commissioner as an examining consultant, concluded in her psychological evaluation in March 2007 that Plaintiff is limited to performing "simple repetitive task[s] and [can] complete a full day's work without interruption from psychiatric symptoms." (AR 472)

Furthermore, Dr. Feinfeld's opinion is not completely at odds with the ME's assessment of Plaintiff's mental functional limitations at the hearing (AR 71-72) which the ALJ adopted (AR 18). Dr. Griffin arrived at levels of "marked" limitations for Plaintiff's "ability to get along with co-workers and peers without distracting them or exhibiting behavioral extremes", as well as "moderate" limitations for Plaintiff's "ability to interact appropriately with the general public" and "ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness." (AR 71) While the ALJ purported to agree with the ME's analysis and used it as the basis for assessing Plaintiff's MRFC, in fact, it would seem that the ME's assessment of Plaintiff's mental functional limitations were more restrictive than those the ALJ adopted.

The ALJ's MRFC assessment is equally troubling for the reason that the ALJ did not provide "specific, legitimate reasons, supported by substantial evidence in the record" to reject the opinions of Dr. Townsend and Dr. Williams, that "[Plaintiff] is limited to the performance of simple repetitive tasks without further limitation."

(AR 19; 472, 488, exhibit citation omitted); <u>Carmickle v. Commissioner</u> <u>of Social Security Administration</u>, 533 F.3d 1155, 1164 (9th Cir. 2008) (finding that the Commissioner may reject the controverted opinion of an examining physician only for "specific and legitimate reasons supported by substantial evidence in the record"). Dr. Griffin's assessment during the hearing that Plaintiff did not have "any significant limitations in understanding and remembering" (AR 71) contrasts with Dr. Townsend's psychological evaluation and Dr. Williams' mental functional limitations assessment which found that Plaintiff had "moderate" limitations in "[his] ability to understand and remember detailed instructions" and in "[his] ability to carry out detailed instructions." (AR 468-472, 486) However, Dr. Griffin does not reference any objective medical findings in the record for his mental functional limitations assessment other than the following statements:

> "[M]any individuals with [Asperger's syndrome] are capable of gainful employment and personal self-sufficiency." (AR 71); "[When Plaintiff] was undergoing [Dr. Townsend's psychological evaluation and Dr. To's Internal Medicine Evaluation] [AR 462-67, 468-72] [Plaintiff] does not apparently meet the diagnosis for an affective disorder. " (AR 76); "[T]his record reflects someone who with the right work circumstances could be happily and gainfully employed." (AR 78)

In fact, the ME's testimony focuses mostly on his assessment of Plaintiff's limitations in social interactions as opposed to understanding and memory (<u>See</u> AR 77-78). The ME failed to even mention Dr. Williams' mental functional limitation assessments and made only

a fleeting critique of Dr. Townsend's psychological evaluation: "Dr. Townsend found that [Plaintiff's] Asperger's disorder was simply by history and assigned a GAF score of 60 which indicates relatively mild to moderate condition." (AR 73) The ME also failed to cite the results of the five tests administered during Plaintiff's psychological evaluation that formed the basis of Dr. Townsend's relevant conclusions (AR 470-72) or any other clinical findings in the record. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that the contrary opinion of a non-examining medical expert alone does not constitute "specific, legitimate reason" for rejecting an examining physician's opinion but "may constitute substantial evidence when ... consistent with other independent evidence in the record").

Although Dr. Townsend did not have the opportunity to review Plaintiff's treatment records during the psychological evaluation (AR 472), unlike Dr. Griffin who did review Plaintiff's medical record (AR 67), Dr. Townsend's conclusion is entitled to greater weight. Dr. Townsend's conclusion that Plaintiff is limited to performing "simple repetitive task[s]" (AR 472) is consistent with the record as a whole. Plaintiff's dismissal notice from the SSA documents Plaintiff's "inability to follow basic instructions and [Plaintiff] often fixates on specific tasks" after his re-assignment to perform limited clerical work in November 2005 (AR 227), and the SSA's notice also documents Plaintiff's general inability to perform the critical element of the CR position which "by its nature is complex and requires independent decision-making ... [and] is not repetitive or routine." (AR 223) Dr. Feinfeld's letter dated September 2004 indicates that "[as a result of Plaintiff's Asperger's syndrome, Plaintiff] has difficulties with transition or changes and functions better when there is a sameness or

a repetitive routine. This makes it difficult for him at work to deal with interruptions or sudden changes to his work schedule." (AR 286)

Lastly, the ALJ's MRFC assessment that "[Plaintiff] has mild limitations in concentration" (AR 18) is not supported by the record as a whole. The ALJ purported to base his assessment of Plaintiff's MRFC on the ME's opinion at the hearing: "I accept the opinion of Dr. Griffin and interpret his stated limitations as indicating that [Plaintiff] ... has *mild* limitations in concentration." (AR 18, emphasis added.) However, the ALJ's MRFC assessment is inconsistent with Dr. Griffin's actual mental functional limitations assessment that Plaintiff has "moderate" limitations in his "ability to maintain attention and concentration for extended periods of time", in his "ability to work in coordination or proximity with others without being a distraction to them", and in "[his] ability to complete a normal workday without interruption from psychologically-based symptoms." (AR 71) Furthermore, the ALJ's MRFC assessment is inconsistent with the record which frequently documents Plaintiff's problems with focusing at work as a result of his Asperger's and sleep apnea syndrome (AR 274; 222-23), Plaintiff's Provigil prescription in order to increase his level of alertness (AR 180; 320), and Plaintiff's reoccurring episodes of sleeping while on duty (AR 228-29).

The ALJ's MRFC assessment that "[Plaintiff] has mild limitations in concentration" is also not supported by objective medical findings. Although the ALJ only mentions Dr. Williams' assessment of Plaintiff's concentration to reject Dr. Williams' conclusion that Plaintiff is "limited to the performance of simple repetitive tasks without further limitation" (AR 19; See 488), the ALJ's ultimate assessment of "mild

limitations in concentration" is supported nowhere else in the record

(AR 486). Dr. Williams never examined Plaintiff and his assessment is

completely based on Dr. Townsend's psychological evaluation (See AR

468-72; 474, 488). However, Dr. Williams' assessment of Plaintiff's

concentration alone does not constitute substantial evidence because

Dr. Townsend's psychological evaluation made no objective medical

findings as to Plaintiff's concentration and Dr. Williams' own

assessment is apparently based only on Plaintiff's subjective belief

that he "denies problems with memory or concentration." (AR 468); See

20 C.F.R. §404.1529 (b) ("Your symptoms, such as pain, fatigue,

shortness of breath, weakness, or nervousness, will not be found to

affect your ability to do basic work activities unless medical signs

and laboratory findings show that a medically determinable

impairment(s) is present"); See also Crane v. Shalala, 76 F.3d 251,

253 (9th Cir. 1996), citing Murray v. Heckler, 722 F.2d 499, 501 (9th

Cir. 1983) (finding that "Check-off" forms are disfavored, especially

when they are unsupported by objective findings).

For the foregoing reasons, the Court concludes that the ALJ's

evaluation of all of the psychiatric and psychological evidence

insufficient to perform an adequate analysis and to reach conclusions

at Step Four and Step Five of the sequential evaluation process.

//

//

//

//

//

//

On remand, the ALJ must evaluate the psychiatric and psychological evidence and give proper reasons to substantiate the conclusions to be drawn as to Plaintiff's MRFC.

**IT IS SO ORDERED**.


DATED: June 28, 2011                    /s/
                                VICTOR B. KENTON
                                UNITED STATES MAGISTRATE JUDGE